# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6608 | **DATE** | 5/2/2003 |
| **CASE TITLE** | Terrence N. Ingram vs. Corporate Receivables, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Corporate Receivables, Inc.'s motion to dismiss [doc.# 18] is GRANTED in part (as it pertains to the "writing requirement" claim), and DENIED in part (as it pertains to the "amount of debt" claim).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 0 5 2003 | |
| | Notified counsel by telephone. | | date docketed | 26 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 5/2/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JJK | courtroom deputy's initials | | JJK mailing deputy initials | |
| | Date/time received in central Clerk's Office | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRENCE N. INGRAM, )
)
        Plaintiff, )
)
vs. ) No. 02 C 6608
)
CORPORATE RECEIVABLES, INC., ) Magistrate Judge Schenkier
and OSI COLLECTION SERVICES, INC., )
)
)
        Defendant. )

DOCKETED
MAY 0 5 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Terrance M. Ingram, brings this action pursuant to Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*, against defendants OSI Collection Services, Inc. ("OSI"), in Count I, and Corporate Receivables, Inc. ("CRI"), in Count II. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). OSI has answered the claim by Mr. Ingram; CRI has filed a motion to dismiss Count II pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. # 18).[1]

In Count II, Mr. Ingram alleges that: (i) CRI violated 15 U.S.C. § 1692g(a)(1) when it sent a collection letter that failed to clearly state the amount of the debt due (Compl. ¶¶ 30-31); and (ii) CRI violated 15 U.S.C. § 1692g(a)(3) when it sent Mr. Ingram a collection letter stating that CRI would consider the alleged debt valid unless Mr. Ingram notified CRI, in writing, within 30 days of receiving the collection letter that he disputed the debt or any portion of it (Compl. ¶ 32). For the reasons given below, the Court denies CRI's motion to dismiss the "amount of debt" claim in

---

[1] On December 16, 2002, by the consent of the parties and pursuant to 28 U.S.C. §636(c), the case was reassigned to this Court for all proceedings, including the entry of final judgment (doc.## 14-17).



Count I (Compl. ¶¶ 30-31), but grants the motion to dismiss the "writing requirement" claim in Count II (Compl. ¶ 32).

## I.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the lawsuit. *Triad Assocs. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1990). For purposes of reviewing the motion, we must take all the plaintiff's well-pled allegations as true. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The court must also view the plaintiff's allegations in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); the plaintiff is entitled to all reasonable inferences that can be drawn therefrom. *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied*, 475 U.S. 1047 (1986). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Triad Assoc.*, 892 F.2d at 586. The allegations of the complaint, which we take as true for purposes of ruling on this motion, are as follows.

## II.

Mr. Ingram alleges that CRI is engaged in the business of a collection agency and is a debt collector as defined in the FDCPA (Compl. ¶¶ 4-5). Mr. Ingram alleges that, on or about June 5, 2002, CRI mailed him a collection letter, which sought to collect an amount allegedly incurred by Mr. Ingram in connection with improvements made to his home (Compl. ¶ 12). The upper left hand portion of the collection letter bore the date June 5, 2002. The tear-away portion of the letter designated for return with Mr. Ingram's payment, located in the upper right hand portion of the letter, stated the "Amount: $1622.43" (Compl., Ex. G). The body of the collection letter contained the following statement (in capital letters) regarding the amount of the alleged debt:

2

> THE ABOVE ACCOUNT HAS BEEN PLACED WITH THIS OFFICE FOR COLLECTION. THE BALANCE INCLUDES THE PRINCIPAL AMOUNT DUE AND MAY INCLUDE INTEREST AND ALL LATE CHARGES OR OTHER PENALTIES, IF APPLICABLE, UNDER THE DEFAULT PROVISIONS OF YOUR CONTRACT WITH THE CREDITOR. YOU MAY WISH TO CONSULT THE DEFAULT PROVISIONS OF YOUR CONTRACT TO CONFIRM THESE ADDITIONAL CHARGES, IF ANY.

(Compl., Ex. G). And, the body of the letter also contained the following statement (again, in all capital letters) concerning the alleged debt:

> UNLESS YOU NOTIFY THIS OFFICE IN WRITING, WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE WITHIN THIRTY DAYS FROM RECEIVING THIS NOTICE THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGEMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

(Compl., Ex. G).

Mr. Ingram's claims against CRI arise out of the foregoing statements in the collection letter. Mr. Ingram alleges that CRI's collection letter violates 15 U.S.C. § 1692g(a)(1), because it failed to clearly describe the amount Mr. Ingram allegedly owed (Compl. ¶¶ 30, 31). Mr. Ingram also claims that CRI's collection letter violates 15 U.S.C. § 1692g(a)(3), because it told Mr. Ingram that, unless he notified CRI *in writing* that he disputed the validity of the debt, CRI would assume the debt was valid (Compl. ¶ 32). CRI argues that neither of these claims states a cause of action. We address each of CRI's arguments in the order that CRI presents them.

## III.

CRI argues that the collection letter, taken as a whole, accurately states the amount allegedly due, and thus does not does not violate 15 U.S.C. § 1692g(a)(1). For the reasons that follow, we disagree. While we do not express an opinion as to whether Mr. Ingram will be able to prove his claim, we do find that Mr. Ingram's allegations in Count II concerning CRI's compliance with Section 1692g(a)(1) state a claim for relief.

To be sure, CRI's collection letter states an "amount" – but, the letter does not expressly state as of what date that amount was due. Moreover, the letter states that the "balance (a different word than the word "amount" used in the letter to describe the $1,622.43 figure) includes the principal amount due and may include interest and all late charges or other penalties, if applicable under the default provisions of your contract with the creditor"– without squarely saying whether the "balance" or the "$1,622.43 amount" in fact included those charges.

In *Miller v. McCalla Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), the Seventh Circuit held that a collection letter that specified the amount of the unpaid principal balance, without stating how that amount was altered by unpaid interest, unpaid late charges, escrow advances or other charges, failed to comply with the FDCPA. In so holding, the Seventh Circuit recognized that it "might be impossible for the defendants to . . . determine what the amount of the debt might be at some future date if, for example, the interest rate in the loan agreement was variable." 214 F.3d at 875. The Court of Appeals therefore created a "safe harbor" formula for complying with Section 1692g(a)(1):

> we hold that the following statement satisfies the debt collector's duty to state the amount of the debt in cases like this where the amount varies from day to day: "as of the date of this letter, you owe $_____ [the exact amount due]. Because of interest, late charges, and

4

other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."

214 F.3d 876; *see also Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003).

CRI's collection letter does not comply with this "safe harbor" formula established by the Seventh Circuit for cases "where the amount varies from day to day."[2] The CRI collection letter does not expressly state that the amount of $1,622.43 was due as of the date of the letter, June 5, 2002, as opposed to some other date. CRI's collection letter did not contain language informing Mr. Ingram that the $1,622.43 amount may increase by the time he chose to pay (if in fact he did choose to pay) the alleged debt, or that if he paid the stated amount, CRI might inform him that greater payment was a requirement. Thus, CRI is not entitled to dismissal of this claim based on the safe harbor formula provided in *Miller*.

However, *Miller* made clear that the "safe harbor" language was just that: a safe harbor, and not a statutory requirement. "Of course, we do not hold that a debt collector *must* use this form of words to avoid violating the statute; but if he does, and (to repeat an essential qualification) does not add other words that confuse the message, he will as a matter of law have discharged his duty to state clearly the amount due." *Miller*, 214 F.3d at 876 (emphasis in original). And, courts within this district have found that various ways of stating the amount of the debt have satisfied Section 1692g(a)(1), even though not precisely tracking the safe harbor language of *Miller*. *See Jolly v. Shapiro*, 237 F.Supp. 2d 888, 889, 891-93 (granted summary judgment in favor of a debt collector

---

[2]Drawing all reasonable inferences from the complaint in favor of the plaintiff, as we must on a motion to dismiss, we treat this case as one, like *Miller*, where the amount allegedly due from the consumer would vary from day to day by virtue of interest, late charges and/or penalties.

5

which sent the consumer a collection letter that complied with the safe harbor formulation, except that it stated the amount due as of some date other than the date of the collection letter); *Taylor v. Calvary Investments, LLC*, 210 F. Supp. 2d 1001, 1003 (N.D.Ill. 2002) (granted judgment on the pleadings for a debt collector which sent a collection letter stating the total balance due, including the amounts attributable to principal, interest and other charges, and further stated that the balance "may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with the creditor").

Unlike the letters in *Jolly* and *Taylor*, CRI's collection letter here did not notify Mr. Ingram that the specific amount stated in the letter could be adjusted due to the future accrual of interest, late charges or penalties; and, unlike the letter in *Jolly*, it did not provide a specific statement as to the effective date of the stated amount due. While CRI might attempt to link the date of the letter, June 5, 2002, and the stated amount of $1,622.43, the letter does not specifically say this, and the Court is unpersuaded that it can make a determination as a matter of law that this is the only reasonable inference that unsophisticated readers could draw from a review of the letter. "The debt collector may not defeat the [FDCPA's] purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the [FDCPA's] solicitude." *Bartlett v. Heibl*, 128 F.3d, 497, 500 (7th Cir. 1997); *see also Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999) (noting that "district judges are not good proxies for the 'unsophisticated consumers' whose interests the statute protects").

For these reasons, the Court denies CRI's motion to dismiss Count II insofar as it asserts a claim based on the failure to disclose the amount of the debt as required by Section 1692g(a)(1).

# IV.

Plaintiff's remaining allegation against CRI concerns a statement in the June 5, 2002 letter that "unless you notify this office, *in writing* within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid" (Compl., Ex. G (emphasis in original)). Mr. Ingram contends that this sentence violates Section 1692g(a)(3) of the FDCPA, by stating that any dispute must be in writing when that subsection does not expressly impose a writing requirement (Compl. ¶ 32). This claim raises the legal question of whether Section 1692g(a)(3) contemplates that a dispute concerning the validity of the debt is to be submitted in writing, which we may decide on this motion to dismiss.

To answer this question of statutory construction, we begin "where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). In relevant part, Section 1692g reads as follows:

(a) within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing .
. . .
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's *written request* within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
(b) If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of

7

the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. §1692g(a)(3)-(5) and (b) (emphasis added).

Section 1692g(a)(3) does not expressly state that a debt, or any portion of it, will be assumed valid unless the consumer disputes it *in writing*. On the other hand, subsections (a)(4) and (a)(5) both specifically require the debt collector to inform the consumer that the debt collector will obtain verification of the debt and provide it to the consumer, and will provide the consumer with the name and address of the original debtor, if the consumer so requests in writing. Section 1692g(b) further states that the debt collector will halt any collection efforts if the consumer provides written notice within the 30-day period described in subsection (a) that the debt or any portion of it is disputed, or that the name of the original creditor is being sought. The statutory construction question presented here is whether Congress's failure to state in 15 U.S.C. § 1692g(a)(3) that challenges to the validity of a debt are to be in writing was purposeful, or was instead an inadvertent slip of the drafter's pen that should be corrected by implying a writing requirement in subsection (a)(3), so as to harmonize that subsection with the express writing requirements in subsections (a)(4) and (a)(5).

The Seventh Circuit has not addressed this question, but the only appeals court to do so has held that the writing requirement is implied in subsection (a)(3). In *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991), the Third Circuit held that telling a consumer that any dispute of the alleged debt must be in writing did not render the statutory notice invalid. In reaching that conclusion, the appeals court considered the interplay between subsections (a)(3), (4) and (5). The court considered the argument that "[s]ince subsections (a)(4) and (a)(5) expressly call for written communications,

8

the absence of such a requirement in subsection (a)(3) is strong evidence ... that Congress advertently omitted an analogous requirement in subsection (a)(3)." 950 F.2d at 112. However, the court rejected that argument:

> Adopting [that] reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system.

950 F.2d at 112. The appeals court further noted that requiring the dispute of a debt to be in writing would not contravene the congressional purpose underlying Section 1692g. Rather, the Court recommended that implying the writing requirement in Section 1692g(a)(3) would serve the same purpose as requiring the consumer to request in writing verification of the debt and the identity of the original creditor: "a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts." *Id.* Accordingly, the Third Circuit held that "subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing." *Id.*[3]

---

[3]Plaintiff has cited the First Circuit decision in *Brady v. Creditor Recovery Company*, 160 F.3d 64 (1st Cir. 1998), as an appeals court decision that parts company with the Third Circuit's analysis in *Graziano*. We disagree. The question presented to the First Circuit in *Brady* was whether a debt collector would violate 15 U.S.C. § 1692e(8), which states that the failure of a debt collector to disclose the disputed status of a debt constitutes "false, deceptive, or misleading representation," if the debt collector failed to disclose a dispute that was not made by the consumer in writing. The First Circuit held that, since Section 1692e(8) does not state that a debt collector is required to disclose a disputed debt only if the dispute is reduced to writing, a writing requirement should not be implied. The First Circuit did not discuss Section 1692g(a)(3)-(5), much less rule on whether subsection (a)(3) should be read to include a requirement that disputes be made in writing.

The *Brady* court did state that "the fact that other sections of the FDCPA like Section 1692g(b) explicitly impose a writing requirement suggests that Congress's omission of such a requirement in Section 1692e(8) was not inadvertent." 160 F.3d at 66-67. However, the court also noted that the different purposes of Section 1692g(b) and Section 1692e(8) underscored why Congress would impose a writing requirement in the former but not in the latter section. The First Circuit explained that Section 1692g(b) deals with the ability of the consumer to trigger the debt

9

The Court finds the reasoning of the *Graziano* opinion to be persuasive. Moreover, a number of courts within the Seventh Circuit have held that a writing is required to effectively dispute a debt. *See Jolly v. Shapiro*, 237 F.Supp.2d 888, 889 (N.D. Ill. 2002); *Castillo v. Carter*, No. 99-1767, 2001 WL 238121, at *3 (S.D.Ind., Feb. 28, 2001); *Blair v. Collectech Systems, Inc.*, No. 97-7930, 1998 WL 214705, at *2 (N.D. Ill., April 24, 1998); *Flowers v. Accelerated Bureau of Collections, Inc.*, No.96-4003, 1997 WL 136313 at *6 (N.D. Ill., 1997); *Sturdevant v. Jolas*, 942 F.Supp. 426, 430 (W.D. Wis. 1996). Indeed, in *Flowers*, the court held that a collection letter that told a consumer that she could dispute the validity of a debt by telephone, rather than in writing, "contradicts the validation notice." *Flowers*, 1997 WL 136313, at *7.

We have considered the contrary authorities cited by the plaintiff from district courts in other circuits (Pl.'s Mem. at 10-12), which take the view that a writing requirement should not be implied for subsection (a)(3). Plaintiff argues that those cases should be followed because they employ the means of statutory construction required by the Seventh Circuit — an approach that plaintiff claims is contrary to the one used by the Third Circuit in *Graziano* (Pl.'s Mem. at 13-14). We recognize that the Seventh Circuit has counseled that "our charge is to interpret statutes as they are written, and not to revise them by reading into them policies we deem advisable." *United States Department of the Navy v. Federal Labor Relations Authority*, 975 F.2d 348, 356 (7th Cir. 1992). However, this rule

---

validation process, which requires a debt collector to cease all further debt collection activity until it complies with various verification obligations. The court said that when granting consumers "the ultimate power vis-a-vis debt collectors: the power to demand the cessation of all collection activities," it made sense for Congress to require that this "ultimate power" be triggered by a request in writing. 160 F.3d at 67. By contrast, the First Circuit reasoned that Section 1692e(8) does not affect debt collection practices at all, but only requires a debt collector "who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history." *Id.* The First Circuit explained that "[g]iven the much more limited effect of this provision, Congress' decision not to condition its exercise on the submission of written notification makes logical sense." *Id.* In the Court's view, this reasoning supports, rather than undermines, the implication of a writing requirement in Section 1692g(a)(3), which — like Section 1692g(b) and unlike Section 1692e(8) — is part of the validation process.

of strict adherence to the statutory language yields when "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair Enterprises, Inc.*, 489 U.S. at 243 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). In such cases, "the intention of the drafters, rather than the strict language, controls." *Ron Pair Enterprises, Inc.*, 489 U.S. at 243. *See generally Roell v. Withrow*, 538 U.S. ___, 2003 WL 1960602, *4 (2003).

Here, we are faced with a situation in which a literal application of subsection (a)(3) would tend to undermine the purposes underlying the validation process contemplated by Section 1692g(a) and (b). Notices that strictly comply with the language of subsection (a)(3) could cause consumers (whom the law presumes to be "unsophisticated") to advise debt collectors of disputes about alleged debts only orally, and thus to forego the important rights they have under subsections (a)(4), (a)(5) and (b) if – but only if – the dispute is made in writing. That would have the untoward effect of depriving the unsophisticated consumers, "who are the particular objects of the [FDCPA's] solicitude," *Bartlett*, 128 F.3d at 500, of important rights that Congress sought to confer on them. Thus, by implying a writing requirement in subsection (a)(3), the Court is not implementing a policy preference contrary to congressional intent, but rather is interpreting the statute to avoid an "incoherent result," *Graziano*, 950 F.2d at 113-114, a result that we believe Congress did not intend.

Finally, we have considered plaintiff's citation to *Whitten v. ARS, National Services, Inc.*, No. 00 C 6080, 2002 WL 1050320 (N.D. Ill., May 23, 2002) (Pl's Mem. at 12-13), but find that decision inapposite. In *Whitten*, the court did not consider whether subsection (a)(3) should be construed to contain a requirement that disputes be set forth in writing. Rather, the court considered whether a collection letter, which told the consumer that "suitable dispute documentation" must be submitted, violated the FDCPA. *Id.* at *4. The court reasoned that a collection letter telling the consumer that

11

he or she had to supply "suitable dispute documentation" within the 30-day period specified in Section 1692g(a) imposed a requirement not contemplated by the FDCPA. *Id.* at *4-5. The *Whitten* court thus rejected the debt collector's effort to impose a requirement that the consumer provide written proof of the *basis* for the dispute about the debt; the opinion did not consider, much less decide, the different question of whether subsection (a)(3) should be construed to require that the consumer state in writing the *existence* of a dispute. The *Jolly* court found this to be a proper basis to distinguish the *Whitten* decision, 237 F. Supp. 2d at 895 n. 4, and so do we. Accordingly, the Court grants the motion to dismiss the claim in Count II insofar as it is based on an alleged violation of Section 1692g(a)(3).

## CONCLUSION

For the reasons given above, CRI's motion to dismiss (doc. #18) is GRANTED in part (as it pertains to the "writing requirement" claim), and DENIED in part (as it pertains to the "amount of debt" claim).

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
UNITED STATES MAGISTRATE JUDGE

Dated: May 2, 2003